338 So.2d 1148 (1976)
Wilma M. BILLIOT, Individually and as natural tutrix of her minor son, Joseph J. Billiot, Jr., and as Administratrix of the estates of Joseph J. Billiot, Sr. and Charlotte Marie Billiot
v.
Mr. Lyes BOURG d/b/a Lyes Bourg Truck Lines et al.
No. 56920.
Supreme Court of Louisiana.
February 23, 1976.
On Rehearing October 6, 1976.
Dissenting Opinion November 12, 1976.
*1149 Henry L. Klein, Windhorst, Heisler, De Laup, Wysocki & Klein, New Orleans, Ralph Hillman, Thibodaux, for plaintiffs-applicants.
Philip E. Henderson, Henderson, Hanemann & Morris, Houma, for defendants-respondents.
SANDERS, Chief Justice.
This suit for damages for personal injuries and wrongful death arose out of an automobile accident which happened on Louisiana Highway 27 at about 9:30 p.m., on September 8, 1972. A cane truck, owned by Lyes Bourg Truck Lines, operated by William Jasper, and leased to South Coast Corporation, which was being driven south, ran out of gas and stopped at the west edge of the southbound lane of the highway. Later, an automobile owned and operated by Joseph J. Billiot, Sr., also travelling south and approaching the truck from the rear, swerved into the northbound lane of traffic in an effort to avoid striking the truck. The right rear of the Billiot vehicle struck the left rear of the truck, causing the automobile to spin into the northbound lane, where it was struck by an oncoming car. As a result of the accident, Mr. Billiot and his young daughter, Charlotte Marie, were killed; his wife, Wilma M. Billiot, and son, Joseph J. Billiot, Jr., were injured.
Mrs. Billiot filed suit, individually, as natural tutrix of Joseph, Jr., and as administratrix of the estates of her deceased husband and daughter, seeking damages for the wrongful death of Mr. Billiot and Charlotte Marie, and for the personal injuries suffered by herself and her son.
Defendants in the suit were Lyes Bourg, doing business as Lyes Bourg Truck Lines, William Jasper, South Coast Corporation, Aetna Casualty and Surety Company, and Jim Walter Homes, Inc. Answer was filed denying negligence and pleading the negligence and contributory negligence of Mr. Billiot. Defendants also third partied the plaintiff in her various capacities for contribution of one-half of any damages for which they might be cast because of the negligence of Joseph J. Billiot, Sr. The suit was later voluntarily dismissed as to South Coast Corporation and Jim Walter Homes, Inc.
After trial before a jury, verdict was rendered, finding that both William Jasper and Joseph J. Billiot, Sr. were negligent, but that the negligence of Billiot was not a proximate cause of the accident. Damages of $100,000 were awarded to Mrs. Billiot, individually, and $17,500 was awarded to Joseph J. Billiot, Jr. Judgment, in solido, was signed against Bourg, Jasper and Aetna, and they appealed. The Court of Appeal reversed the district court and rendered judgment in favor of the defendants and against plaintiff, dismissing plaintiff's suit at her cost. La.App., 317 So.2d 684. On the application of plaintiff, we granted writs to review the judgment of the Court of Appeal. La., 320 So.2d 910 (1975).
In this Court, plaintiff contends that the Court of Appeal erred: in reversing the lower court in the absence of manifest error; in adopting a "preponderance of the evidence" rule at the appellate level; in substituting its judgment in an area particularly insusceptible to appellate review, credibility of witnesses; and in absolving the defendant of negligence when there was a violation of the highway safety act.
Generally, the findings of fact by the trier of fact are entitled to great weight and will not be disturbed on appeal. Canter v. Koehring Company, La., 283 So. 2d 716 (1973). However, the Court of Appeal's jurisdiction extends to the law and the facts. LSA-Const. (1974) Art. 5, § *1150 10(B). In the present case, the Court of Appeal was required, as we are, to review both the law and the facts. LSA-Const. (1974) Art. 5, § 5(C).
Having reviewed the evidence, we find that the driver of the truck was negligent in failing to remove his vehicle from the traveled portion of the highway when it was practical to do so.
LSA-R.S. 32:141 (A) provides:
"Upon any highway outside of a business or residence district, no person shall stop, park, or leave standing any vehicle, whether attended or unattended, upon the paved or main traveled part of the highway when it is practicable to stop, park or so leave such vehicle off such part of said highway, but in every event an unobstructed width of the highway opposite a standing vehicle shall be left for the free passage of other vehicles and a clear view of such stopped vehicles shall be available from a distance of two hundred feet in each direction upon such highway."
Mr. Jasper testified that, prior to stopping on the highway, he heard a familiar "popping" noise which indicated that a tank was out of gas. He attempted to switch over to another tank, and the noise continued. After the motor died, he coasted for some distance, attempting to start the motor. The record discloses that he could have cleared the traveled portion of the highway; he chose, however, to remain on the traveled portion of the highway and obstruct traffic. On today's highways, such an obstruction, expecially at night, is a real hazard to approaching motorists.
The statute was designed to prevent the type of collision that occurred here. That collision, in our opinion, would not have occurred had not the disabled truck been obstructing the highway. Hence, the truck driver's negligence was causally related to the ensuing harm and is actionable. See Dixie Drive It Yourself Sys. v. American Beverage Co., 242 La. 471, 137 So.2d 298 (1962).
Likewise, we find the driver of the automobile guilty of contributory negligence. Mrs. Billiot's testimony was that her husband was driving between 55 and 60 miles per hour. The applicable speed limit was 35 miles per hour. Although the testimony is conflicting, the record reflects that some lights were burning on the truck. Had Mr. Billiot been driving within the speed limit, it is more probable than not that he could have stopped without injury to himself and his family. Hence, his negligence was contributory.
The deceased husband's contributory negligence bars recovery of his damages. The defendants cast are also entitled to contribution of one-half the damages from his estate. See Smith v. Southern Farm Bureau Casualty Ins. Co., 247 La. 695, 174 So.2d 122 (1965). The plaintiff, Wilma M. Billiot, is entitled to judgment for her own damages and those due her children.
For the reasons assigned, the judgment of the Court of Appeal is reversed, and judgment is rendered in favor of plaintiff, Wilma M. Billiot, individually and in her representative capacity, against Lyes Bourg doing business as Lyes Bourg Truck Lines, William Jasper and Aetna Casualty and Surety Company, in solido, in such sums as may hereafter be fixed by the Court of Appeal, subject to the right of contribution asserted in the third party demand. The case is remanded to the Court of Appeal for the fixing of the damages according to law and the amount of contribution on the third party demand. All court costs are assessed against the defendants, in solido.
SUMMERS, J., concurs with reasons.
CALOGERO, J., concurs in part, dissents in part and assigns reasons.
SUMMERS, Justice (concurring).
I can agree with the result reached here upon the theory, which the facts support, *1151 that stopping the truck on the traveled portion of the highway in violation of a highway regulatory statute (La.R.S. 32:141, subd. A.) was the proximate cause of the accident and the ensuing harm.
CALOGERO, Justice (concurring in part, dissenting in part).
I concur in that part of the majority opinion which revises the judgment of the Court of Appeal and renders judgment in favor of plaintiff, Wilma M. Billiot, individually and in her representative capacity.
I dissent, however, from that part of the majority opinion which affirms the judgment of the Court of Appeal that the deceased husband, Joseph L. Billiot, Sr., was contributorily negligent and that, therefore, his recovery of damages was barred. In my view the trial court was correct in finding from the facts that although Mr. Billiot was negligent, his negligence was not a proximate cause of the accident.

ON REHEARING
TATE, Justice.
We granted rehearing primarily to reconsider our determination on original hearing that recovery of damages by the plaintiff widow is barred by the contributory negligence of her deceased husband.
The facts are more fully set forth in our original opinion and in the opinion of the intermediate court, 317 So.2d 684 (La.App. 1st Cir. 1975), certiorari granted, 320 So.2d 910 (La.1975). For purposes of the present opinion, as found by us on original hearing, they relevantly show:
The accident occurred after dark at 9:30 p.m. The defendants' truck was stopped in the southbound lane of a two-lane highway, negligently obstructing oncoming southbound traffic. An automobile driven by Joseph Billiot, Sr., the plaintiff's deceased husband, approached the truck from the rear and, in an effort to avoid the truck, swerved left into the northbound lane, where it was struck by another vehicle.
Billiot and his young daughter, Charlotte Marie, were killed in the accident. The plaintiff Mrs. Billiot and her minor son, Joseph, Jr., were injured in the accident. After trial by jury, on special verdicts the jury found that the defendants were negligent, that the plaintiff's negligence in exceeding the speed limit was not a proximate cause of the accident, and that Mrs. Billiot and her son were injured in specified amounts.
On our original hearing, despite the trial jury's express finding that the excess speed bore no causal relationship to the accident, we held that the deceased husband was contributorily negligent. The basis for our initial holding was that he was driving 55-60 mph on a straight open stretch of the highway, in which there were signs posted showing the speed limit to be 35 mph.
On reconsideration, we find we were in error in so concluding.
The trial jury permissibly resolved in the plaintiff's favor the conflicting evidence as to a principal issue, the observability of the obstructing truck to oncoming southbound night traffic. The intermediate court erroneously disregarded the trier of fact's resolution of this opposing evidence in the plaintiff's favor, based upon evidence the jury reasonably found credible.
This principal issue concerned whether the defendant's cane truck, dangerously obstructing the highway, was sufficiently visible to oncoming vehicles to alert them to its presence on the highway. The trial jury accepted as credible and preponderating the evidence of the plaintiff's witnesses that the truck was stopped without running lights or emergency flashers.
Mrs. Billiot herself testified that there were no lights on the truck and that, when she and her husband first observed it, it *1152 was too late to stop.[1] The testimony of the witnesses Altom, Bouquet, Mrs. Bouquet, Clarence Billiot (no relation), and Hebert were generally corroborative of her testimony that the truck was parked without noticeably visible reflector or lighting to alert southbound motorists of the hazard blocking their passage in their traffic lane.
Mr. and Mrs. Bouquet, for instance, drove up upon and past the truck shortly before the accident. In their southbound vehicle, the driver did not notice the parked truck until within seventy-five feet of it, when (after the passenger's exclamation) he noticed dim lights on the rear of the cane truck. The passenger saw the rear lights just as they came near the truck, and she thought the truck was moving until her husband was forced to veer around it. Since there was no traffic approaching from the opposite direction, the Bouquet vehicle was able to pass the truck by going around it in the northbound lane.
Clarence Billiot, who inspected the truck shortly after the accident, found that it had only one taillight, which was lit but only dimly visible because of the dirt and dust on it. He found no other lighting on the truck.
The Bouquet car, and another southbound automobile in which Altom was a passenger (which also came upon the truck's rear shortly before the accident), were able to pass the truck without incident, since there was no traffic approaching the northbound lane. Likewise, no approaching headlights lessened even more their ability to observe and notice that the dimly lit truck was stopped in obstruction of the highway.
Under the evidence reasonably found credible by it, the trial jury could properly find that the decedent Billiot's failure to observe sooner the truck was excused by its obscured lighting and lack of warning reflectors or flashers, and by the loss of visual acuity impairing his vision (unlike that of the other two earlier vehicles) by the headlights of the two vehicles approaching him from the north, with the second of which he collided as he veered around the truck. Craker v. Allstate Insurance Company, 259 La. 578, 250 So.2d 746 (1971); Suire v. Winters, 233 La. 585, 97 So.2d 404 (1957).
The jury could thus reasonably have found, as it did by its special verdict, that the decedent's speed at 55 mph, in excess of the posted speed of 35 mph[2], was not a cause in fact of the accidentin short, that due to the negligent lack of sufficient lighting or warning to alert oncoming traffic of the hazard in its path, the accident would have occurred whether the decedent was driving 35 mph or 55 mph. We find no reason to disturb this factual conclusion by the trier of fact, based upon evidence reasonably found credible by it. Canter v. Koehring Company, 283 So.2d 716 (La. 1976).
When as here the evidence is conflicting, an appellate court should not disturb the trier of fact's reasonable evaluation of one set of witnesses as credible, and its consequent rejection of the testimony of the opposing set of witnesses; nor should the reviewing court disturb the trier of fact's reasonable factual inferences drawn from such testimony found by it to be credible. The intermediate court was *1153 in error in doing so and in, consequently, reversing the determination of the trier of fact.
Accordingly, we affirm the trial jury's determination that the defendants did not bear their burden of proving by preponderance of the evidence that the defendant's conduct constitued contributory negligence which was a legal cause contributing to the accident.

Damages
By special verdicts, the jury awarded damages in specified amounts.[3] The amounts were not questioned in the court of appeal. We have reviewed the general damages and found them to be within the much-discretion of the trier of fact to award. La.Civ.Code art. 1934(3). Accordingly, we will affirm the trial court judgment against the defendants in the amounts awarded by the trial court judgment. Weiland v. King, 281 So.2d 688 (La. 1973).

Decree
For the reasons assigned, we set aside the judgment of the court of appeal, and we reinstated and affirm the judgment of the trial court and against the defendants. The defendants are taxed with all costs of these proceedings.
COURT OF APPEAL JUDGMENT SET ASIDE, AND TRIAL COURT JUDGMENT REINSTATED AND AFFIRMED.
SANDERS, C.J., dissents for the reasons assigned on original hearing and for the additional reasons assigned by SUMMERS, J.
SUMMERS, J., dissents with written reasons.
MARCUS, J., dissents for reasons assigned on original hearing.
SUMMERS, Justice (dissenting).
Rehearing was granted to consider, primarily, the contributory negligence of Joseph J. Billiot, Sr., and its causal relation to the accident and resulting damage.
The trial court judgment found Billiot negligent, but decided that his negligence was not a proximate cause of the collision. Having found that the driver of the truck was negligent, the trial court permitted plaintiffs to recover. The Court of Appeal, on the other hand, decided that the driver of the truck was not negligent and, therefore, it was unnecessary to consider Billiot's contributory negligence. That court denied recovery.
In our original opinion we found both drivers negligent, finding that the negligence of Billiot contributed to the accident. Recovery for Billiot's wrongful death was therefore denied. Recovery on behalf of the plaintiff, Wilma Billiot, the widow, individually and as natural tutrix of Joseph, Jr., and as administratrix of the estate of her deceased daughter, Charlotte Marie, for Charlotte Marie's wrongful death, and for her own personal injuries was allowed in solido against both drivers.
On rehearing our original opinion was set aside, the judgment of the Court of Appeal was reversed, and the judgment of the trial court was reinstated.
Another review of the evidence confirms my original view as expressed by the Chief Justice that both the truck driver, William Jasper, and Billiot were negligent. Jasper was negligent for failing to stop his truck off the paved or main traveled part of the *1154 highway when it was practicable to stop, park or leave the truck off the main traveled part of the highway. Jasper, therefore, failed to obey the mandate of Section 141 (A) of Title 32 of the Revised Statutes. Breach of his duty in that respect created a risk to the traveling public, a risk the statute was designed to eliminate. This was negligence, which continued to the moment of the accident. As such the negligence was a proximate cause of the accident. Dixie Drive It Yourself System v. American Beverage Company, 242 La. 471, 137 So.2d 298 (1962).
By the same reasoning, Billiot was negligent. He was driving between 55 and 60 miles per hour in contravention of the 35 mile speed limit prescribed for that site. The truck was first seen by the car's occupants approximately 900 feet away; it was large and had some lights. If he had obeyed the speed limit, and exercised reasonable care, he could have seen the truck in time to stop and thereby avoid the collision and damage which resulted.
The speed limit was designed to eliminate a risk to the traveling public. Billiot's violation of that proscription was a breach of the duty to protect motorists imposed upon him by the speed limit. Breach of that duty created a risk to travelers the speed limit was designed to eliminate. Billiot's action was, therefore, negligent. Since his negligence continued to the moment of the accident and concurred with the negligence of the truck driver, it was a proximate cause of, and contributed to, the accident and resulting damage. Billiot and Jasper were, therefore, liable in solido for the resulting harm and damage incurred by the plaintiffs, except their claim for Billiot's death. They cannot recover for this latter claim because his death resulted from his own negligence. La.Civil Code art. 2315; Callais v. Allstate Insurance Co., 334 So.2d 692 (La. 1976).
I respectfully dissent.
NOTES
[1] In seeking to impeach this testimony, the defendant makes much of her estimate of the place on the road where, under cross-examination, she estimated she noticed the truck. However, the trial jury, which could observe her on the stand and evaluate her entire testimony, could properly accept her positive testimony to the effect as noted in our opinion above, and discount as an inaccurate estimate this housewife's after-the-fact attempt to remember the place she first noticed the truck as she and her husband approached it.
[2] The posted speed limit of 35 mph was because a high school was situated on this stretch of otherwise open highway. We do not reach the additional issue whether violation of this limit, posted to assure safety of schoolchildren, could be a legal cause of this nighttime accident, after school hours, if the duty imposed by the statute did not encompass the particular risk here encountered. See Brantley v. Brown, 277 So.2d 141 (La. 1973).
[3] The jury awarded Mrs. Billiot $70,000 for damages due for the death of her husband (a 28-year-old fisherman earning over $10,000 per year), $20,000 for damages due her for the death of her minor daughter, and $10,000 for her own personal injuries (fractures of an elbow and two ribs, lacerations, etc.); in total, $100,000. Damages awarded to Joseph Billiot, Jr., age under one year, were $15,000 damages for loss of his father and $2,500 for his own personal injuries (fractures of arm and other injuries); $17,500 in all, awarded to Mrs. Billiot as his tutrix and administratrix of his estate.