KLEES, Judge.
Defendant-appellant appeals a decision from the Civil District Court for Orleans Parish awarding the plaintiff-appellee Alfred Pizzeck, a former employee of the appellant, $52,448.00 as fees owed to him pursuant to an oral agreement.
In the fall of 1975 Alfred Pizzeck and Eugene V. Macon, the President of Execu-tone System of Louisiana, defendant-appellant, entered into an oral agreement providing that Mr. Pizzeck would receive ten (10%) percent of all equipment, wire and cable sold on jobs he had obtained for the company, plus fifty (50%) percent of labor overages, minus a $500.00 draw per week and any “unusual expenses”.
Pursuant to this agreement Mr. Pizzeck was paid $88,000 for fiscal year 1976 (July 1, 1975 — June 30, 1976) minus a draw of $500.00 per week. However, no expenses were deducted from this figure and after this oversight was discovered by Mr. Macon and his CPA, Mr. Schlekau, it was decided that the expenses would not be deducted since the company had “one terrific good year”.
In fiscal year 1977 (July 1,1976 — June 30, 1977) the financial picture for the company was not as good. Mr. Macon expressed displeasure over the large amount of money claimed by Mr. Pizzeck pursuant to the terms of their 1975 agreement, $107,814.00. He thereafter informed Mr. Pizzeck that he was going to deduct $31,989 from the figure to cover the salary of two other employees who worked in Mr. Pizzeck’s department, presumably as an “unusual expense”.
Mr. Pizzeck disapproved of this and he was discharged by Mr. Macon but was paid the disputed $107,814.00 minus his draw up until the date of termination. He later unsuccessfully attempted to get his job back, and filed suit to recover compensation for jobs which were sold by him but which were not completed during fiscal year 1977.
The District Court awarded Mr. Pizzeck $15,904.00 on jobs obtained or sold by him which were completed after June 30, 1977, but before his termination on September 29, 1977, and $36,544.00 on jobs completed after the latter date.
Appellant contends that there was no meeting of the mind between the parties regarding the terms and conditions of the 1975 oral agreement and therefore there was no contract, and as such any awards for compensation were in error.
The plaintiff argues that there was a meeting of the mind and that all of the terms of the agreement were understood. The defendant did not deny the terms but claimed that he had a different concept of what those terms meant insofar as the agreement was concerned.
The record further reveals that the defendant-appellant’s president, Mr. Macon, admits that he did enter into an oral agreement with the plaintiff-appellee in the latter part of 1975 and, in addition, he agreed that the terms of the agreement were that Mr. Pizzeck was to receive 10% of all equipment, wire and cable sold on a job plus 50% of labor coverages, minus a $500.00 draw per week and any “unusual expenses”. Supporting this is the fact that the plaintiff was paid in accordance with this plan for fiscal year 1976.
It was not until the end of fiscal year 1977 that Mr. Macon claimed to have a different interpretation of the terms of the agreement, specifically with regard to deducting the salaries of the two employees in Mr. Pizzeck’s department. At the time Mr. Macon and Mr. Pizzeck entered into their agreement Mr. Pizzeck was the only employee in the new department. It was not until fiscal year 1977 that the other two men were hired.
The trial judge found that this was the only part of the agreement where there was no evidence of a clear and mutual understanding and based upon the facts as presented to him he concluded that the sala *1204 ries of the two employees were not unusual expenses to be deducted from Mr. Pizzeck’s funds. It is within the province of the trial court to interpret what was meant by “unusual expenses” in accordance with the intention of the parties. The trial court obviously chose to accept the plaintiff-appellee’s version, and we find no error in the trial court’s action. Canter v. Koehring Co., 283 So.2d 716 (La.1973); Arceneaux v. Domingue, 365 So.2d 1330 (La.1978).
Appellant contends that the trial court erred in concluding that the plaintiff earned 50% of the commissions accruing after September 29, 1977. We must agree.
After plaintiff’s termination of employment on September 29, 1977 the contract or agreement between the parties ended. Thus we conclude that plaintiff was entitled to be paid out of the commissions earned only on a quantum meruit basis.
When asked about what percentage of work Mr. Pizzeck did on those jobs which were completed after September 29, 1977 the reply was “approximately around fifty percent”. However, Mr. Pizzeck later testified:
Q What things did you not do on those jobs prior to them being closed?
A What was eliminated in my phase was estimating the job, securing the purchase order from the contractor or customer and proceeding with the rest of it which pertains to the installation department.
Q And you are saying that is about half of the whole thing?
A Well, let’s say estimating is going to reduce it down to below half. I would say about thirty-five, forty percent.
Q What part is a third and what part is two-thirds?
A My third is preparing the job. The other two-thirds is estimating and the installation in these particular jobs.
Q You’re saying about a third of the selling on those was work you did?
A Yes.
Q Okay. No further questions.
In view of this testimony as well as defendant’s estimates of 10% we conclude the trial judge erred in granting Mr. Pizzeck 50% of the commission after September 29, 1977. Considering the testimony above in light of all the testimony adduced in the record this court finds that the 50% entitlement to Mr. Pizzeck should be amended to thirty (30%) percent of $73,089 or $21,-926.70.
The appellant also asserts that the final paycheck received by the plaintiff was a compromise and settlement of the entire matter. As pointed out by the trial judge in his reasons for judgment the check was not in writing and no notation whatever was made on the check to indicate that it was intended as a final payment. Even if one considers the check to be a valid writing, the record is devoid of proof that both parties intended to compromise the claim and without such there is no compromise. Mooneyhan v. State Farm Mutual Auto Ins. Co., 290 So.2d 405 (La.App. 2nd Cir. 1974).
Finally the appellant contends that the trial judge did not rule on its reconventional demand. Although the trial court did not specifically mention the reconventional demand in its judgment the demand was nevertheless denied by the trial court.
The defendant relied on the testimony of Mr. Albert J. Aucoin, Jr., a certified public accountant, who offered into evidence a document purporting to show that the plaintiff was in fact overpaid according to the terms of the agreement entered into by him and Mr. Macon. The plaintiff relied on the testimony of Mr. Harry Williams, also a certified public accountant, who provided the court with documents indicating that the plaintiff was only owed further compensation.
The trier of fact should assess the credibility of experts who testify at the trial, as well as that of lay witnesses, to determine the most credible and realistic evidence and the fact finder’s determination of the credibility of those witnesses will not be disturbed unless found to be *1205 clearly erroneous. Guidry v. Davis, 382 So.2d 250 (La.App. 3rd Cir. 1980).
Here the trial judge faced with conflicting testimony from equally qualified experts, chose to accept the expert testimony of Mr. William over that of Mr. Aucoin and there appears to be no error on the part of the trial judge.
The record reveals that in the document prepared by Mr. Aucoin, the salary of Mr. Pizzeck’s replacement, Mr. Macaluso, was deducted and several jobs were not included based upon an assumption by the defendant that the plaintiff was not entitled to any commission from those jobs. The court took notice of those errors, that some of Mr. Aucoin’s “totals were admittedly wrong”, and accordingly decided that the computations of Mr. Williams, which indicated that the plaintiff did not owe, but was owed funds, were more credible.
Therefore for the above and foregoing reasons, the judgment of the trial court is amended to reduce the total judgment to $37,830.70 and as amended it is affirmed.
AMENDED AND AFFIRMED.