WATKINS, Judge.
This is an action brought by James Henley against Sterling Drug, Inc., makers of d-Con Four/Gone, an insecticide which plaintiff contends burned after spraying, effectively destroying his house. The case was tried before a jury, which answered interrogatories in a manner unfavorable to recovery, with the trial court thereupon dismissing plaintiff’s suit with prejudice. From this judgment the plaintiff appeals. We affirm.
Henley originally filed suit against Sterling Drug, Inc. State Farm Automobile Insurance Company (later amended to State Farm Fire and Casualty Insurance Company) filed a petition of intervention naming Sterling Drugs [sic], Inc., and Royal Globe Insurance Company as defendants. State Farm alleged it was subrogat-ed to Henley’s claim in the sum of $26,-213.86, which had been paid to Henley on a State Farm fire insurance policy held by him. We dismissed the appeal and the answer to the appeal of State Farm. 470 So.2d 647 (La.App. 1st Cir.1985). (The judgment of the trial court was rendered in favor of both Sterling Drugs [sic], Inc. and D-Con Company, Inc., dismissing plaintiff’s suit.)
On the morning of May 7, 1979, Joanne Henley (not a party herein), wife of James Henley, set off four cans of d-Con Four/Gone in her house at Pearl River, Louisiana. She left the house for approximately forty-five minutes. Remembering that she had left a goldfish in the house, she returned to the house, held her breath, entered the house, and picked up the goldfish bowl. She left the house and set the goldfish bowl down outside. Just then she heard what she describes as an explosion and the sound of breaking glass. She looked back while running away and saw smoke coming from the house and from the rafters.
All parts of the house were damaged. Merlin Flair, a deputy state fire marshal who examined the house, and who testified for plaintiff, testified that damage was about equal at the floor and ceiling and less severe about half the way to the ceiling of each room. He thought, as did the plaintiff’s other experts, that the fire was caused by the d-Con aerosol spray, each can of d-Con containing about one ounce of kerosene, which is of course inflammable.
Tom Siciliano, an employee of Lehn & Fink Products, a division of Sterling Drug, testified that the aerosol can containing the d-Con also contained freon, which is used in fire extinguishers and is inert or nonflammable and acts as a fire retardant. Robert Beauchamp, a former fire marshal in Costa Mesa, California, who examined pictures of the fire damage, testified that damage was most severe near the ceiling, especially in the vicinity of the natural gas range in the kitchen, which would tend to indicate a natural gas explosion had occurred. Furthermore, the roof was lifted off the walls of the house at one point, *1340 which is typical of damage caused by a natural gas flash fire.
Mr. Flair, expert witness for plaintiff, testified that he conducted an experiment by applying a flame directly to spray from a d-Con can, and noted the mist would burn. Mr. Beauchamp, expert witness called by defendant, testified that he conducted a standard drum test on the d-Con product in which the product is injected in a closed drum in which a flame is burning. In three successive tests, in which the d-Con was gradually consumed, the length of time the flame lasted was greater each time, indicating d-Con was a fire retardant, if anything.
It should be noted that neither test was an exact duplication of conditions in the Henley house. For that reason, defendant objected when plaintiff sought to introduce the results of Mr. Flair’s test, and plaintiff objected when defendant sought to introduce the result of Mr. Beau-champ’s test. Plaintiff now contends the introduction of the results of Mr. Beau-champ’s test was reversible error. However, plaintiff overlooks the fact he opened up the entire matter of tests in introducing Mr. Flair’s test at an earlier point in the trial, which likewise failed to duplicate conditions in the house. We therefore find no reversible error.
Plaintiff further contends that he was entitled to a mistrial because the jury failed to answer one of the three interrogatories propounded to it, and also plaintiff contends the two answers that were given were inconsistent.
The three questions propounded to the jury, and the answers to each, were as follows:
1. DO YOU FIND THAT THE PRODUCT, D-CON, WAS UNREASONABLY DANGEROUS FOR NORMAL USE BECAUSE OF A DEFECT IN THE PRODUCT AND/OR BECAUSE OF A FAILURE TO WARN OF POTENTIAL RISK?
X YES _NO
2. DO YOU FIND THAT THE MANUFACTURERS COULD HAVE REASONABLY ANTICIPATED THE INJURIES?
_YES _NO
3.DO YOU FIND THAT THE DEFECT AND/OR THE FAILURE TO WARN WAS A CAUSE IN FACT OF THE INJURIES COMPLAINED OF?
_YES X NO
The jury failed to answer question 2, apparently because it was undecided. However, the ultimate merit of plaintiff’s case is conclusively decided by the jury’s answer to question 3, that it found causation had not been established.
To recover in a products liability case, plaintiff must not only prove the product was defective, but must also prove the defect caused the injury. Weber v. Fidelity & Casualty Insurance Company of New York, 259 La. 599, 250 So.2d 754 (1971). There is no logical inconsistency in finding a product to be defective but yet in finding the defect did not produce the injury-
Despite plaintiff’s contention to the contrary, there is no inconsistency in the jury’s results in the context of the trial. The jury could have found that although the d-Con Four/Gone was inherently defective since it contained flammable kerosene (regardless of the fire retardant qualities of the freon contained therein), it was not the cause of the fire due to the fact that the total quantity of kerosene present, four ounces, was insufficient to cause such extensive damage to the Henley house. Rather, the jury could have just as easily concluded, based upon the evidence presented, that the fire was in all probability caused by a natural gas leak as there is evidence to support a conclusion that the cause of the fire was natural gas. We do not find any inconsistency in the jury’s verdict, and do not find that a mistrial should have been granted.
Finally, plaintiff contends that the verdict was contrary to the evidence presented. The foregoing discussion indicates the jury’s verdict found substantial support in the evidence. The charred walls and ceiling near the range, the burst-out glass, and the lifted roof all tend to sug *1341 gest a natural gas explosion or, at least, suggest a natural gas explosion as easily as a d-Con explosion. Where the findings of fact are based upon a trial in which both lay and expert testimony is introduced, the trier of fact may assess the credibility of the experts, and its determination will not be disturbed unless found to be clearly erroneous. Pizzeck v. Executone Systems Company of Louisiana, Inc., 411 So.2d 1202, 1204 (La.App. 4th Cir.1982), writ denied, 415 So.2d 944 (La.1982). Here, we do not find the jury’s determination to have been clearly erroneous that the fire was not caused by the d-Con Four/Gone.
The judgment of the trial court is affirmed, at appellant’s cost.
AFFIRMED.