WILLIAMS, Judge.
This is an appeal by defendants Frank Clayton and his insurer, Employer’s Mutual Liability Insurance Company from a jury verdict in favor of plaintiff Jerry Grubb, Sr.
On September 6, 1968 plaintiff was injured on a staircase at the American Can Company, where he was employed. As a result of a fall, plaintiff aggravated an injury to his back. Claiming that the stairs were in deplorable condition, he sued defendant Frank Clayton, who according to evidence introduced at trial, had been in charge of safety at the plant. Plaintiff’s *2 accident occurred before the bar on executive liability was enacted by the Louisiana Legislature. A jury found Clayton to be negligent in failing to keep the stairs repaired and awarded plaintiff $120,000.00 in general damages and lost wages of $32,-000.00. It is from this decision that defendants now appeal.
Defendants present three issues for review: (1) proof of causation; (2) contributory negligence of plaintiff (plaintiffs accident occurred when contributory negligence was a complete bar to recovery in tort) and (3) proof of negligence of Clayton. Furthermore, it appears that defendants have raised, in brief to this court, objections to the admission of impeachment testimony.
CAUSATION
Plaintiff was injured as he was coming down a staircase at work. As he stepped down on a stair the lip of the tread, extending over the riser, broke off and gave way. Plaintiff testified that he looked at the broken piece of tread and it appeared to him to have been rotted. He threw the piece away. When he learned of the accident, Clayton got the piece of wood out of the trash and inspected it. He claimed that the wood was not rotten. He threw the piece of tread away. The next morning, Donald McGinnis looked at the staircase and saw the remaining tread. He testified that it looked dark and rotten where the lip had broken off.
Both parties presented evidence of expert witnesses as to the condition of the staircase as it existed at the time of the accident. These experts were hampered by the time elapsed since the accident and could not make an inspection of the stairs as they existed at that time. Both experts based their opinions on facts presented by the parties.
The staircase was located by windows that were more on less continuously broken. Rainwater, coming in through the broken windows, was allowed to stand on the stairs for long periods of time. Cardboard was placed on the stairs to soak up the water. This condition had existed for about two years.
Plaintiffs witness, an expert in forestry and wood, testified that it was possible for water to enter into the treads, causing the wood to rot. Although both plaintiffs and defendant’s experts agreed that it would be highly unlikely for only one tread to rot and consequently break, it is completely logical that the tread causing plaintiffs fall simply was the first to reach such a condition that it would give way. Treads had been replaced between the time of the accident and trial. As plaintiff points out in brief to this court, it is reasonable to assume that any other potentially dangerous steps had been replaced through the years. The testimony of defendant’s expert in this area largely contradicted that of plaintiff’s expert. That the jury obviously chose to accept the opinion of one qualified expert over another in this case is not basis for reversal.
CONTRIBUTORY NEGLIGENCE
Defendant argues that plaintiff was contributorily negligent in using the stairs.
The basis of defendant’s assertion is that had the stairs been in the deteriorated condition in which plaintiff has claimed, then he was negligent in failing to use a safer way of going from floor to floor. Evidence at trial indicated that there were two other stairways on that floor: one located approximately 150 feet and 450 feet from the one that plaintiff used. Testimony also indicated that most employees used the stairs that caused plaintiff’s fall.
The jury found that plaintiff was not contributorily negligent. Obviously, it concluded that under the circumstances plaintiff was acting in the most reasonable manner: he was descending the stairs cautiously and holding on to the handrail. We cannot conclude that the jury was manifestly erroneous in determining plaintiff was not required to use an alternate stairwell. Although complaints had been lodged about the condition of the stairs, a reasonable man may not have necessarily concluded that they presented a danger of breakage. We note that defendant’s own expert was of the opinion that this was not an inherent danger. Clearly it was not *3 unreasonable for the jury to conclude that plaintiff could not appreciate that particular risk of using the stairs in their condition. Canter v. Koehring Co., 283 So.2d 716 (La.1973).
FRANK CLAYTON’S LIABILITY
Plaintiff asserted that numerous complaints about the condition of the stairs had been made to Frank Clayton, who was the management representative on the safety committee. Clayton testified that he was in charge of safety for the plant and that repair of the windows and stairs would have been his responsibility. He also testified, however, that he could not remember receiving any complaints about the stairs. Other witnesses testified that the condition of the stairs was common knowledge at the plant and that Clayton was also aware of it. Clayton also could not remember whether he saw water standing on the stairs.
This is not a necessarily a question of strict liability as defendant suggests. Although Clayton could not specifically recall having actual knowledge of the stairs, he clearly would have been negligent had he not known about the stairs. Based upon the evidence of the problem the stairs presented coupled with Clayton’s duty in the area of safety, we cannot say that it was manifestly erroneous for the jury to conclude that Clayton was negligent.
IMPEACHMENT TESTIMONY
At trial, plaintiff attempted to introduce the impeachment testimony of Albert Populus. Populus’s testimony would have been directed toward the issue of Clayton’s veracity.
Although not listed as a potential witness on the pre-trial order filed with the court, plaintiff successfully moved to have Popu-lus placed on the stand to contravert Clayton’s assertion that he had never lied under oath. Defense counsel asked for a bench conference, which was not transcribed. It appears, however, from the transcript of the following day that defense counsel may have opened the door to Populus by stating that if plaintiff could prove that Clayton was a liar, then he should go ahead and do so.
Nevertheless, once the trial determined the basis of Populus’s testimony, that is that of a labor/management controversy, he disallowed any testimony from Populus because his knowledge of Clayton’s reputation was not based on the community at large but rather in the area of labor/management relations. The defense moved for a mistrial, which was denied. The court granted defendant’s request for special jury charges, but none were submitted.
Populus then was allowed to testify in the limited area of Clayton’s safety responsibilities. Defense counsel cross-examined Populus and clearly opened the door as to his relationship with Clayton and why he disliked (hated) him. The trial court then allowed plaintiff’s counsel to question Po-pulus as to the basis for his feelings toward Clayton, including the question of truthfulness. We cannot find that, in light of the Populus cross-examination, that the trial court abused its discretion in allowing further examination into the Clayton/Popu-lus relationship. Henley v. Sterling Drugs, Inc., 489 So.2d 1338, 1340 (La.App. 1st Cir.1986).
Based on the foregoing reasons, the decision of the jury holding Frank Clayton responsible and finding plaintiff not negligent is affirmed.
AFFIRMED.